**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1551-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KENNETH R. BANKS, a/k/a
KEVIN BANKS, RAQUAN
BANKS, and EDDIE JOHNSON,

     Defendant-Appellant.

_____

Submitted December 13, 2018 – Decided May 29, 2019

Before Judges O'Connor and DeAlmeida.

On appeal from Superior Court of New Jersey, Law Division, Union County, Indictment No. 10-02-0206.

Joseph E. Krakora, Public Defender, attorney for appellant (John A. Albright, Designated Counsel; William P. Welaj, on the brief).

Michael A. Monahan, Acting Union County Prosecutor, attorney for respondent (Michele C. Buckley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Kenneth R. Banks appeals from the June 23, 2017 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing.  For the reasons that follow, we affirm.

I

In May 2012, a jury convicted defendant of first-degree robbery, N.J.S.A. 2C:15-1; second-degree eluding, N.J.S.A. 2C:29-2(b); and fourth-degree possession of an imitation firearm for an unlawful purpose, N.J.S.A. 2C:39-4(e). After merging the weapons offense into the robbery conviction, the court imposed a mandatory extended term of imprisonment of thirty years for the robbery conviction, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.  The court imposed a consecutive, discretionary extended term of imprisonment of twenty years for the eluding conviction, with a ten-year period of parole ineligibility.

Defendant appealed and we affirmed his convictions.  State v. Banks, No. A-1896-12 (App. Div. Oct. 30, 2015).  However, we vacated his sentence and remanded the matter to the trial court for re-sentencing, because N.J.S.A. 2C:44-5(a)(2) prohibits imposition of both a mandatory and a discretionary extended term in the same sentencing proceeding, State v. Robinson, 217 N.J. 594, 612

(2014); see also State v. Banks, No. A-1896-12 (App. Div. Oct. 30, 2015). On February 17, 2016, the Supreme Court denied defendant's petition for certification. State v. Banks, 224 N.J. 246 (2016).

In September 2016, the trial court imposed a twenty-year term of imprisonment for the robbery conviction, with an eighty-five percent period of parole disqualification pursuant to NERA. On the eluding conviction, the trial court imposed a consecutive ten-year term of imprisonment, with a five-year period of parole ineligibility. Defendant did not file a direct appeal from the sentence imposed following the remand.

The evidence pertinent to the issues on defendant's appeal from the order denying him post-conviction relief is as follows. After purchasing items of clothing at a local store, fourteen-year old J.M.[1] and twelve-year-old V.M. entered a park in Elizabeth accompanied by their mother, G.S.-M. (mother). J.M., who was lagging behind her sister and mother, was approached by a man who asked her for "a dollar and change." J.M. told him she did not have any money. He and another man who then appeared told her to give them all of her money, and the taller of the two men pointed a gun at her stomach. Although the gun was, in fact, a starter pistol, J.M. believed it to be real.

---

[1] We use initials to protect the identity of the victim and her family.

The shorter man took J.M.'s shopping bags, bus pass, cell phone, cell phone charger, jewelry, and purse. The assailants then fled the scene. The mother saw them enter a "silverfish" or "light-colored" car, and J.M. used her mother's cell phone to call the police, who arrived minutes later. J.M. described the assailants' appearance to the police, and provided other details. One of the officers conducted a search of the area in his patrol car and spotted a silver car with two male occupants. He was able to ascertain their upper-body clothing fit J.M.'s description of what she claimed the assailants wore during the robbery.

The officer called for back-up assistance, maneuvered his patrol car behind the silver vehicle, and activated his lights and siren in an attempt to effectuate a motor vehicle stop. Instead, the silver car accelerated, and a chase ensued. The silver car finally came to a stop when it crashed. The police removed a person later identified as defendant from the driver's side of the car and placed him under arrest. Co-defendant Andre Nance was apprehended when he stepped out of the car.

A search of the vehicle revealed two shopping bags on which were affixed the logo of the store from which J.M. had purchased clothing just before the robbery, as well as items of clothing that matched J.M.'s description of what one of the assailants was wearing during the robbery. In co-defendant's pocket was

a phone charger and a bus pass, and a starter pistol was found on the ground next to the spot where co-defendant had stepped out of the silver car after the crash.

Later that day, J.M. viewed photographic arrays at the police station and, after seeing Banks's photograph in the array, identified him as one of the perpetrators. At trial, J.M. identified defendant in court, as well as the starter pistol recovered next to the car after the crash and other items seized from the car that belonged to her. She also testified that the clothing defendants were wearing when arrested was what they were wearing at the time of the robbery.

Defendant testified. He stated he was in Elizabeth and on his way home to Newark when he saw the co-defendant, a friend from his neighborhood. Defendant stopped to give him a ride home; when the co-defendant entered the car, he had a bag in his hand. When defendant made an illegal U-turn, the police attempted to pull him over. Defendant panicked and tried to elude the police because he was driving without a license and feared such action would result in a parole violation or the loss of his car. Banks denied having any knowledge of the robbery or the gun eventually found in the vicinity of the car when he was arrested.

As stated, the jury subsequently convicted defendant of the three offenses with which he had been charged. Following our decision on his direct appeal

and his resentencing on remand, on March 21, 2016, defendant filed a petition seeking post-conviction relief. Of pertinence to the issues before us are two allegations of ineffectiveness of counsel defendant made before the PCR court.

Defendant's first allegation was trial counsel failed to object to the trial court's jury charge on the issue of flight. Citing State v. Mann, 132 N.J. 410 (1993), defendant noted our Supreme Court requires that, "[i]f a defendant offers an explanation for [his] departure, the trial court should instruct the jury that if it finds the defendant's explanation credible, it should not draw any inference of the defendant's consciousness of guilt from the defendant's departure." Id. at 421.

Defendant contended the trial court did not appropriately instruct the jury on this latter point and trial counsel failed to bring such omission to the court's attention. The subject charge the trial court read to the jury was as follows:

> Now there has been some testimony in the case which you may infer that the defendant fled shortly after the alleged commission of the crime. The defendant denies any flight or the defendant denies that the acts constituted flight.
>
> The question of whether the defendant fled after the commission of the crime is another question of fact for your determination. Mere departure from a place where a crime has been committed does not constitute flight.

6

If you find that the defendant, fearing that an accusation or arrest would be made against him on the charge involved in the indictment, took refuge in flight for the purpose of evading the accusation or arrest on that charge, then you may consider such flight in connection with all of the other evidence in the case as an indication [of] proof of consciousness of guilt.

Flight may only be considered as evidence of consciousness of guilt if you should determine that the defendant's purpose in leaving was to evade accusation or arrest for the offense charged in the indictment.

There has been some testimony in the case from which you may infer that the defendant fled shortly after the alleged commission of the crime of robbery. The defendant denies committing the offense of robbery.

If after all of the evidence you find that the defendant, fearing that an accusation or arrest would be made against him on the charge involved in the indictment, took refuge in flight for the purpose of evading the accusation or arrest, then you may consider such flight in connection with all of the other evidence in the case as an indication or proof of consciousness of guilt.

It is for you, as judges of the facts, to decide whether or not evidence of flight shows a consciousness of guilt and the weight to be given such evidence in light of all of the other evidence in the case.

[(Emphasis added).]

The PCR court found this allegation of ineffectiveness of counsel barred

pursuant to Rule 3:22-4(a)(1) because, on direct appeal, defendant could have

7

but did not assert that the court's jury charge on flight was erroneous, warranting relief. Therefore, the PCR court determined, Rule 3:22-4(a)(1) procedurally barred defendant from seeking the subject relief in a proceeding for post-conviction relief.

The second allegation defendant asserted before the PCR court was that trial counsel was ineffective because, after the State served defendant with a computer aided dispatch (CAD) report in the middle of trial and the court declined to provide counsel sufficient time to review the report, trial counsel failed to request a mistrial. The PCR court determined this allegation was barred pursuant to Rule 3:22-5 because, on direct appeal, defendant raised a sufficiently similar claim.

II

On appeal, defendant presents the following issues for our consideration.

> POINT I: THE POST-CONVICTION RELIEF COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING TO FULLY ADDRESS HIS CONTENTION THAT HE FAILED TO RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL.
>
> A. THE PREVAILING LEGAL PRINCIPLES REGARDING CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL, EVIDENTIARY

8

HEARINGS AND PETITIONS FOR POST-CONVICTION RELIEF.

B. THE DEFENDANT DID NOT RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL AS A RESULT OF COUNSEL'S FAILURE TO OBJECT TO THE TRIAL COURT'S INADEQUATE, INSUFFICIENT AND MISLEADING CHARGE TO THE JURY WITH RESPECT TO FLIGHT.

C. THE DEFENDANT DID NOT RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL AS A RESULT OF COUNSEL'S FAILURE TO REQUEST A MISTRIAL WHEN THE STATE FAILED TO PRODUCE A CAD TICKET UNTIL THE MIDDLE OF TRIAL.

POINT II: THE POST-CONVICTION RELIEF COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF, IN PART, ON PROCEDURAL GROUNDS PURSUANT TO RULE 3:22-4.

POINT III: THE POST-CONVICTION RELIEF COURT ERRED IN REJECTING THE DEFENDANT'S PETITION, IN PART, ON PROCEDURAL GROUNDS PURSUANT TO RULE 3:22-5.

Defendant filed a supplemental brief as a self-represented litigant; it is the same brief he filed in support of his petition when before the PCR court. In his brief he presents the following arguments:

POINT I: THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO INSTRUCT THE JURY THAT IF IT FOUND DEFENDANT'S EXPLANATION FOR THE DEPARTURE CREDIBLE, IT SHOULD NOT DRAW ANY INFERENCE OF DEFENDANT'S CONSCIOUSNESS OF GUILT.

POINT II: PETITIONER WAS DENIED HIS 4TH, 5TH, AND 14TH AMENDMENT RIGHTS UNDER BOTH THE STATE AND FEDERAL CONSTITUTIONS, DUE TO SELECTIVE ENFORCEMENT AND EGREGIOUS ACTS OF RACIAL PROFILING.

POINTS III: PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS 6TH AND 14TH AMENDMENT RIGHTS UNDER THE CONSTITUTION.

To establish an ineffective assistance of counsel claim, a defendant must satisfy the two-prong test formulated in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 52 (1987). First, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Id. at 52 (quoting Strickland, 466 U.S. at 687).

> To satisfy prong one, [a defendant] ha[s] to "overcome a 'strong presumption' that counsel exercised 'reasonable professional judgment' and 'sound trial strategy' in fulfilling his responsibilities." "[I]f counsel makes a thorough investigation of the law and facts and considers all likely options, counsel's trial strategy is

'virtually unchallengeable.'" Mere dissatisfaction with "'a counsel's exercise of judgment'" is insufficient to warrant overturning a conviction.

> [State v. Nash, 212 N.J. 518, 542 (2013) (third alteration in original) (citations omitted).]

Second, a defendant must prove he suffered prejudice due to counsel's deficient performance. Strickland, 466 U.S. at 687. A defendant must show by a "reasonable probability" that the deficient performance affected the outcome. Fritz, 105 N.J. at 58. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Pierre, 223 N.J. 560, 583 (2015) (quoting Strickland, 466 U.S. at 694). "If [a] defendant establishes one prong of the Strickland-Fritz standard, but not the other, his claim will be unsuccessful." State v. Parker, 212 N.J. 269, 280 (2012).

In the instant appeal, defendant does not dispute that on direct appeal he could have asserted the jury charge on flight was defective, as well as that trial counsel was ineffective for failing to object to the charge, given the resolution of the latter contention did not rely upon evidence or information outside of the trial record. See State v. Hess, 207 N.J. 123, 145 (2011) ("we routinely decline to entertain ineffective-assistance-of-counsel claims on direct appeal because those claims 'involve allegations and evidence that lie outside the trial record.'") (quoting State v. Preciose, 129 N.J. 451, 460 (1992)). However, defendant

11

claims appellate counsel was ineffective because she failed to raise these contentions on direct appeal. Defendant also continues to maintain trial counsel was ineffective for failing to object to the jury charge, arguing had trial counsel done so, the trial court may have responded to trial counsel's objections by correcting the charge. Therefore, defendant contends, the PCR court erred when it denied him relief pursuant to Rule 3:22-4(a)(1).

Although the PCR court did not rule on whether appellate counsel was ineffective, in the interest of judicial economy, see State v. Carrion-Collazo, 221 N.J. Super. 103, 113 (App. Div. 1987), we address and dispose of this contention. In our view, even if appellate and trial counsel were ineffective, a decision we need not reach, defendant cannot show their alleged omissions fulfill the second prong of the Strickland test – that defendant suffered prejudice due to counsels' deficient performance.

First, in its charge on flight, the court instructed the jury that flight may only be considered as evidence of consciousness of guilt should the jury "determine that defendant's purpose in leaving was to evade accusation or arrest for the offense charged in the indictment." (Emphasis added). This instruction provided "sufficient guidance" to the jury and did not create any "risk that the . . . ultimate determination of guilt or innocence [was] based on speculation,

misunderstanding, or confusion." State v. Olivio, 123 N.J. 550, 567-68 (1991). We also presume the jury followed the court's instruction. State v. Burns, 192 N.J. 312, 335 (2007). Accordingly, we are satisfied the jury would not have inferred consciousness of guilt of robbery and possession of an imitation firearm for an unlawful purpose if it determined defendant's reason for eluding the police was to avoid being found driving without a license, a parole violation, and losing possession of his car.

Second, as we found in our decision on direct appeal, the evidence against defendant was overwhelming. We noted J.M. identified defendant shortly after the robbery and at trial. The starter pistol was found next to and the proceeds of the robbery discovered in defendant's car. Therefore, even if both trial and appellate counsel were ineffective for the reasons alleged, because the subject jury instruction was sufficient and the evidence against defendant overwhelming, defendant cannot fulfill the second prong of the Strickland test.

Defendant contends the State failed to provide him a particular CAD report until the middle of trial. He claims the trial court gave counsel only one day to review the report. According to defendant, when that one-day period expired, the trial court denied counsel's request for additional time to review the report. Defendant argues counsel was ineffective because he did not seek a

mistrial when denied more time to review the report. However, the following passage from the decision we issued on defendant's direct appeal exposes this allegation of ineffectiveness as being factually unsupported. We stated:

> Banks argues that the State's failure to produce a second [CAD] report from the robbery until midway through the trial, combined with the judge's grant of only a short adjournment to investigate, requires reversal. He further contends that the judge should have granted his motion for a new trial on these grounds.
>
> Our review of the record, however, reveals that it was never firmly established that the State failed to provide this second CAD report in discovery. Moreover, accepting arguendo defendant's assertion that it had not been produced, the judge asked defense counsel if he wanted a curative instruction when the report was referenced during Scharpnick's testimony. Counsel demurred and asked for some "additional time" to evaluate the document.
>
> The judge adjourned trial for the balance of that day, and, when proceedings re-commenced the following day, Banks's counsel announced he was ready to proceed and would address any unresolved issues regarding the second CAD report through the cross-examination of Scharpnick and Alvarez. We find no error in the judge's handling of the issue, particularly since, even now, defendant cannot specifically identify any prejudice resulting from his late receipt of the CAD report.
>
> [State v. Banks, No. 1896-12 (App. Div. Oct. 30, 2015) (slip op. at 27-28).]

14

In addition, as is also evident from the above passage, an essentially identical claim was raised and decided on direct appeal, precluding the subject claim asserted in this PCR proceeding from being considered. See R. 3:22-5.

We have considered defendant's remaining arguments and conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

In summary, we are satisfied from our review of the record that defendant failed to make a prima facie showing of ineffectiveness of trial or appellate counsel within the Strickland test. Accordingly, for the reasons stated, the post-conviction relief defendant seeks was appropriately denied.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1551-17T4