# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1269-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GABRIEL T. MATOS,

    Defendant-Appellant.

_____

> Argued March 25, 2025 – Decided August 4, 2025
>
> Before Judges Gilson, Bishop-Thompson, and Augostini.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 21-01-0044.
>
> Rachel A. Neckes, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Rachel A. Neckes, of counsel and on the briefs).
>
> Hudson E. Knight, Assistant Prosecutor, argued the cause for respondent (Yolanda Ciccone, Middlesex County Prosecutor, attorney; Hudson E. Knight, of counsel and on the brief).

PER CURIAM

Following a jury trial, defendant Gabriel Matos was convicted of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1) (count one); first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(2)(c) (count two); second-degree sexual assault, N.J.S.A. 2C:14-2(b) (count three); third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3(a) (count four); and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1) (count five). The charges resulted from defendant's recurrent sexual assault of his stepdaughter G.L.V. (Georgina).[1]

Defendant was sentenced to an aggregate prison term of sixty-three years. In that regard, on count one defendant was sentenced to forty years of imprisonment with thirty years of parole ineligibility. On counts two, three, and four, he was sentenced to consecutive prison terms totaling twenty-three years. Counts two and three were subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. Count five was made consecutive to count one, while running concurrent to all other convictions. Defendant was also sentenced to parole supervision for life and required to report and register under Megan's Law, N.J.S.A. 2C:7-2,

---

[1] We use initials and fictitious names for the minor victim and witnesses to protect their privacy interests. R. 1:38-3(c)(9), (12).

A-1269-23

once he was released on parole.  The judge also imposed assessments and penalties.

I.

On appeal, defendant raises the following contentions for our consideration:

> POINT I
>
> [DEFENDANT'S] CONVICTIONS MUST BE REVERSED BECAUSE THE COURT DID NOT INSTRUCT THE JURY ABOUT THE NARROW PURPOSE OF FRESH COMPLAINT EVIDENCE AND THE FRESH COMPLAINT TESTIMONY WAS UNDULY CUMULATIVE.
>
> POINT II
>
> REVERSAL IS NECESSARY BECAUSE SUBSTANTIAL EVIDENCE OF UNCHARGED WRONGDOING WAS ERRONEOUSLY INTRODUCED AT TRIAL.  (Not raised below).
>
> A.  The New York Allegations are not Admissible Intrinsic Evidence.
>
> B.  The New York Allegations are not Admissible Under Rule 404(b).
>
> POINT III
>
> [DEFENDANT'S] CONVICTIONS MUST BE REVERSED BECAUSE THE COURT EXCLUDED RELEVANT EVIDENCE NECESSARY TO [DEFENDANT'S] DEFENSE.

3

POINT IV

THE PROSECUTOR IMPROPERLY BOLSTERED [GEORGINA'S] CREDIBILITY AND INFLAMED THE JURY, DEPRIVING [DEFENDANT] OF A FAIR TRIAL. (Not raised below).

POINT V

THE CUMULATIVE EFFECT OF THE ERRORS DENIED [DEFENDANT] A FAIR TRIAL AND REQUIRES REVERSAL. (Not raised below).

POINT VI

THE COURT'S SEVERAL SENTENCING ERRORS NECESSITATES A REMAND FOR RESENTENCING.

A. The Court Erred in Finding and Weighing the Aggravating and Mitigating Factors.

B. The Court Should Have Merged Count One with Count Three and Count Two with Count Four.

C. The Court Failed to Apply Yarbough and Torres Before Imposing Consecutive Sentences.[2]

D. The Court Erred in Assessing a Fee Under N.J.S.A 2C:14-10.

We have considered the arguments in view of the record and guiding legal principles, and we are not persuaded any errors, individually or cumulatively,

---

[2] State v. Yarbrough, 100 N.J. 627 (1985), cert. denied, 475 U.S. 1014 (1986); State v. Torres, 246 N.J. 246 (2021).

warrant reversal. We therefore affirm defendant's convictions. However, we vacate and remand for resentencing.

A. The Fresh Complaint Testimony of K.M. and B.P.

We first address defendant's arguments that the trial judge erred in permitting the fresh complaint testimony of K.M. (Ken), Georgina's boyfriend, and B.P. (Phillips), her eighth-grade teacher. Specifically, defendant contends the fresh complaint testimony of these witnesses should not have been used for their truth or to bolster Georgina's allegations. Defendant further contends the trial judge failed to properly instruct the jury regarding the limited purpose for which their fresh complaint testimony can be considered.

Prior to trial, following a N.J.R.E. 104 hearing, the motion judge ruled that the testimony of Ken and Phillips was admissible as fresh complaint testimony. At trial, Ken's testimony was limited to Georgina's disclosure to him that she was "being molested by [defendant]" and to his subsequent disclosure of this information to Phillips. Similarly, Phillips's testimony was confined to the disclosures he received from Ken and Georgina, as well as his subsequent reporting of these disclosures to the appropriate authorities. Defendant did not object to either witness's testimony at trial.

A-1269-23

Hearsay is an out-of-court statement admitted "to prove the truth of the matter asserted," N.J.R.E. 801(c), and, subject to certain exceptions, is inadmissible. N.J.R.E. 802. However, under the fresh complaint rule, the State can present "evidence of a victim's complaint of sexual abuse, [which is] otherwise inadmissible as hearsay, to negate the inference that the victim's initial silence or delay indicates that the charge is fabricated." State v. R.K., 220 N.J. 444, 455 (2015).

We review a trial judge's evidentiary rulings "under the abuse of discretion standard because, from its genesis, the decision to admit or exclude evidence is one firmly entrusted to the trial [judge's] discretion." State v. Prall, 231 N.J. 567, 580 (2018) (quoting Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010)). "Under [the] deferential standard, we review a trial [judge's] evidentiary ruling only for a 'clear error in judgment.'" State v. Medina, 242 N.J. 397, 412 (2020) (quoting State v. Scott, 229 N.J. 469, 479 (2017)). We will not substitute our "judgment for the trial [judge's] unless," the trial judge's determination "' was so wide of the mark that a manifest denial of justice resulted.'" Ibid. (quoting State v. Brown, 170 N.J. 138, 147 (2001)).

Defendant made no objection at trial to the admission of the testimony of Ken and Phillips; thus, we review the alleged error for plain error. See R. 2:10-

A-1269-23

2; State v. Branch, 182 N.J. 338, 353 (2005).  "Plain error is a high bar and constitutes 'error not properly preserved for appeal but of a magnitude dictating appellate consideration.'"  State v. Santamaria, 236 N.J. 390, 404 (2019) (quoting State v. Bueso, 225 N.J. 193, 202 (2016)).  To warrant reversal under this standard, the "error must be sufficient to raise 'a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached.'"  State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting State v. Jenkins, 178 N.J. 347, 361 (2004)).  We evaluate an alleged error "in light of the overall strength of the State's case" in determining whether it rises to the level of plain error.  State v. Clark, 251 N.J. 266, 287 (App. Div. 2022) (citation and internal quotation marks omitted).

We are satisfied that the testimony of both Ken and Phillips falls within the scope of the fresh complaint doctrine.  Accordingly, we reject defendant's arguments.  Georgina disclosed the sexual abuse to two people she trusted.  State v. Hill, 121 N.J. 150, 163 (1990) ("[T]o qualify as fresh complaint, the victim's statements to someone [they] would ordinarily turn to for support must have been made within a reasonable time after the alleged assault and must have been spontaneous and voluntary.").

7

The testimony of Ken and Phillips was not hearsay because it was limited to Georgina's spontaneous and voluntary disclosure within a short time after the last act of sexual abuse occurred. "[S]tatements . . . offered, not for the truthfulness of their contents, but only to show that they were in fact made and that the listener took certain action as a result" are "not . . . inadmissible hearsay." Carmona v. Resorts Int'l Hotel, Inc., 189 N.J. 354, 376 (2007) (citation and internal quotation marks omitted). See also State v. Kelly, 207 N.J. Super. 114, 121 (App. Div. 1986). We discern no error in the trial judge's ruling admitting the testimony of Ken or Phillips regarding Georgina's disclosure, nor do we conclude those admissions constituted plain errors. We therefore conclude defendant failed to establish plain errors warranting reversal. See R. 2:10-2.

Defendant next contends the trial judge failed to instruct the jury regarding the narrow purpose of fresh complaint testimony provided by Ken and Phillips. At the charge conference, the trial judge reviewed the jury charge and the verdict sheet with the State and defendant. No objections were raised by either party at the charge conference or when the charge was read to the jury before deliberation. Nor did defendant propose any revisions to the jury charge. Therefore, we apply the plain error standard of review. See State v. Montalvo,

229 N.J. 300, 320 (2017) ("Without an objection at the time a jury instruction is given, 'there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case.'") (quoting State v. Singleton, 211 N.J. 157, 182 (2012)); see also Funderburg, 225 N.J. at 79.

Appropriate and proper jury instructions are essential for a fair trial. State v. Scharf, 225 N.J. 547, 581 (2016); State v. R.E.B., 385 N.J. Super. 72, 90 (App. Div. 2006). "The test to be applied . . . is whether the charge as a whole is misleading, or sets forth accurately and fairly the controlling principles of law." State v. Baum, 224 N.J 147, 159 (2016) (alteration in original) (quoting State v. Jackmon, 305 N.J. Super. 274, 299 (App. Div. 1997)); see also State v. Garrison, 228 N.J. 182, 201 (2017) (finding the whole charge, not just challenged portion, must be read to determine the overall effect).

The record reflects that the jury instruction concerning Georgina's silence and delay in disclosing the sexual assault closely adhered to Model Jury Charges (Criminal), "Fresh Complaint: Silence or Failure to Complain" (rev. Apr. 15, 2013). We generally do not consider an instruction erroneous if it closely tracked the model jury charge. Mogull v. CB Com. Real Est. Grp., Inc., 162 N.J. 449, 466 (2000).

9

The trial judge instructed the jury to "not automatically conclude [Georgina's] testimony [was] untruthful based only on her silence or delayed disclosure" and to consider that "silence or delayed disclosure along with all the other evidence, including [Georgina's] explanation" for her delayed disclosure in determining how much weight to give her testimony. We are not persuaded by defendant's argument that he was deprived of a right to a fair trial because the jury instruction "merely dispel[led] the inference [Georgina] was silent." State v. P.H., 178 N.J. 378, 393 (2004). Therefore, we conclude defendant has failed to establish plain error in the way the jurors were instructed regarding the fresh complaint testimony.

B. The New York Sexual Acts.

For the first time on appeal, defendant argues the trial judge improperly allowed Georgina to testify regarding alleged prior "bad acts" that occurred while she and defendant were residing in New York. Defendant specifically argues the New York allegations are not admissible under N.J.R.E. 404(b) or as intrinsic evidence. We reject defendant's arguments.

The motion judge granted the State's pre-trial motion to admit intrinsic evidence of sexual assault committed in New York through Georgina's testimony. During oral argument, defendant posed no objection.

10

At trial, Georgina testified that, during a three-year period when she lived in New York with her mother, older sister, and defendant, acts of oral sex involving defendant occurred on a daily basis. Defendant coerced her into performing the sexual act by giving her money, clothes, or toys. Georgina also testified that defendant attempted vaginal penetration.

In 2016, the family moved into a one-room apartment in Perth Amboy when Georgina was twelve years old. Defendant continued to force Georgina to perform oral sex on him three or four times per week when she came home from school. In March 2017, defendant vaginally penetrated Georgina on at least two occasions. Georgina testified that she initially refused defendant's repeated advances for sexual intercourse but relented when defendant reminded her that he was "the only person that [paid] the bills."

Defendant did not object to this testimony. Accordingly, the trial judge did not conduct a Rule 404(b) analysis regarding Georgina's testimony. Nevertheless, we "may engage in our own 'plenary review' to determine admissibility" when the trial judge did not apply Rule 404(b) at trial. State v. Rose, 206 N.J. 141, 158 (2011). Under N.J.R.E. 404(b), evidence of "other crimes, wrongs, or acts" is inadmissible as evidence of a person's bad character or criminal predisposition; however, such evidence is admissible to prove

11

"motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident when such matters are relevant to a material issue in dispute." N.J.R.E. 404(b); see State v. Stevens, 115 N.J. 289, 300-01 (1989).

Under State v. Cofield, the evidence: (1) must be relevant to a material issue which is genuinely disputed; (2) the other conduct must be similar in kind and must have occurred reasonably close in time to the events at issue in the criminal trial; (3) evidence of the other conduct must be clear and convincing; and (4) the probative value must not be outweighed by prejudice to defendant. 127 N.J. 328, 338 (1992).

We are satisfied that the evidence of defendant's conduct in New York was properly admitted under the four-prong Cofield analysis to prove motive and opportunity. As to the first prong, the New York acts were relevant and probative of defendant's motive and opportunity to assault Georgina. One of defendant's defenses was that Georgina had falsely accused him of sexual assaults. Georgina's testimony concerning the assaults in New York showed defendant's motive and opportunity to commit the assaults and rebutted his claim that Georgina had recently fabricated the allegations. Concerning the second prong, the acts that occurred in New York explained Georgina's reason for disclosing the abuse, provided background regarding their relationship, and

12

established the defendant's motive to continue assaulting Georgina, believing that she would remain silent.

The third prong, clear and convincing evidence, is also satisfied by Georgina's testimony. The jury had the opportunity to hear Georgina's testimony and evaluate her credibility. See State v. Hernandez, 170 N.J. 106, 127 (2001) ("The clear and convincing standard may be satisfied by uncorroborated testimonial evidence."). As to the final prong, Georgina's testimony was relevant to defendant's motive and opportunity, thus its probative value outweighs the prejudice to defendant. That defendant failed to object to the testimony at trial also demonstrates that defendant did not perceive the testimony about the assaults that occurred in New York to be prejudicial. See State v. Skinner, 218 N.J. 496, 516 (2014). Thus, Georgina's testimony satisfied all four Cofield prongs.

Defendant also argues that the omission of the Rule 404(b) limiting instruction left the jury to conclude that he was a "serial abuser," "a danger to the community," and he had a "propensity to commit the charged crimes." We reject this argument.

"[T]here is a presumption that the [failure to] charge was not error and was unlikely to prejudice the defendant's case" if defendant did not object to the

absence of a jury charge. Montalvo, 229 N.J. at 320. Therefore, we review for plain error.

Here, evidence of the New York acts was used to show motive and opportunity. In the final instruction to the jury, the judge provided instructions to the jury regarding the proper use and consideration of the credibility of each witness, as well as the how the jury should evaluate the testimony of those witnesses. We conclude there was no error, much less an error that possessed a clear capacity to bring about an unjust result.

We likewise reject defendant's argument that the New York acts were inadmissible as intrinsic evidence. In Rose, our Supreme Court established a test, which limits intrinsic evidence to "two narrow categories of evidence." 206 N.J. at 180; see State v. Brockington, 439 N.J. Super. 311, 327-28 (App. Div. 2015). "The first category applies to evidence that 'directly proves' the charged offense," and the "operative factor is whether the evidence has probative value as to the charged offense." Brockington, 439 N.J. Super. at 327 (quoting Rose, 206 N.J. at 180). The second category defines intrinsic evidence as "uncharged acts performed contemporaneously with the charged crime [that] . . . facilitate the commission of the charged crime." Ibid. (quoting Rose, 206 N.J. at 180).

The New York acts provide relevant background information concerning motive and opportunity. Santamaria, 236 N.J. at 409-10. While the New York acts are more appropriately considered admissible pursuant to N.J.R.E. 404(b), we are satisfied the New York evidence is also admissible under an intrinsic evidence framework.

C.     Exclusion of Alleged Relevant Evidence under Rape Shield Law.

Defendant next argues that the trial judge erred in applying the Rape Shield Law, N.J.S.A. 2C:14-7(a), which governs the admissibility of "evidence of the victim's previous sexual conduct" in sexual assault-related offenses. Defendant contends he was precluded from eliciting testimony related to Georgina's sexual history, which he argues was relevant to her credibility and motive to fabricate the charges. Defendant also sought to impeach Georgina by highlighting contradictory statements made to the investigator—initially claiming she had "vaginal and penile intercourse" at age nine, and later stating it occurred at age thirteen.

Defendant's arguments lack support in both case law and the governing legislation. The Rape Shield Law places "restrictions on a defendant's ability to introduce evidence of [a] rape victim's past sexual conduct" in prosecutions for certain sexual offenses, including aggravated sexual assault, sexual assault, and

15

endangering the welfare of a child. State v. J.D., 211 N.J. 344, 355 (2012) (quoting Assemb. Judiciary, L. & Pub. Safety Comm. Statement to A. 677 (Jan. 20, 1994), reprinted in N.J.S.A. 2C:14-7 note); N.J.S.A. 2C:14-7(a).

In that regard, "[u]nder the Rape Shield Law, the probative value of the victim's prior sexual conduct 'depends on clear proof that the conduct occurred, that it is relevant to a material issue in the case, and that it is necessary to a defense.'" State v. Perry, 225 N.J. 222, 234 (2016) (quoting State v. J.A.C., 210 N.J. 281, 300 (2012)). The prejudice contemplated by the Rape Shield Law includes "the trauma to the victim," whether the evidence would "invade the victim's privacy," and the "need to guard victims from excessive cross-examination and prevent undue jury confusion." Ibid.

In determining whether to admit evidence of a victim's prior sexual conduct, the trial judge must "weigh the relevance of the proffered evidence, its necessity to the defense, and its apparent veracity against its potential to humiliate the victim, invade her [or his] privacy, and confuse the jury." J.D., 211 N.J. at 358. That determination "is exquisitely 'fact-sensitive' and 'depends on the facts of each case.'" Perry, 225 N.J. at 238 (quoting J.D., 211 N.J. at 358).

A-1269-23

We disagree with defendant that evidence of Georgina's sexual history was both relevant and minimally prejudicial. Georgina's sexual history, her alleged anger toward defendant, or that she wanted him out of the apartment bore no relevance to the criminal charges. Nor did Georgina's alleged contradictory statements regarding when she was penetrated by defendant indicate bias or fabrication. Simply stated, there was no "logical connection between the proffered evidence" and the charged conduct. State v. Schnabel, 196 N.J. 116, 130-31 (2008) (quoting State v. Williams, 190 N.J. 114, 123 (2007)). We discern no abuse of discretion in precluding evidence of Georgina's sexual history.

D. Prosecutor's Opening Argument and Closing Summations.

For the first time on appeal, defendant argues the prosecutor made numerous remarks during the opening statement and closing argument, which improperly bolstered Georgina's credibility and inflamed the jury. During opening argument, the prosecutor told the jury that "defendant . . . violated his stepdaughter in the worst ways imaginable" and "[f]or five years [Georgina's] life was a living nightmare because of [defendant] . . . ."

Defendant now challenges the prosecutor's closing argument made in response to his defense theory that Georgina fought with him and wanted him to

A-1269-23

leave the house. The prosecutor stated: "Children don't make up allegations of extensive sexual assault because of arguments that they have with their parents or because of their keys being taken away." "[A]buse as traumatic and ongoing as it was in this case, a victim does not forget and she does not make up, even if she wishes she could forget it, even if she wishes it were made up." Lastly, the prosecutor stated: "[Y]ou can hear it in [Georgina's] voice that her testimony has the ring of truth."

Defendant also argues that during closing argument, the prosecutor made two emotional appeals to the jury. The prosecutor reiterated the opening argument that Georgina had been through "the most horrible experience that a child can go through" and the "crime was motivated by depravity, evil, power, [and] control. The [d]efendant took advantage of his position of trust in [Georgina's] life to violate her. And he violated her trust." In remarking on the testimony of the interrogating detective, the prosecutor stated: "I want you to think about what detectives like Detective [Ayala] are tasked with doing every day. And what they have to deal with is beyond comprehension."

"A prosecutor's opening statement 'should provide an outline or roadmap of the State's case' and 'should be limited to a general recital of what the State expects, in good faith, to prove by competent evidence.'" State v. Land, 435

18

N.J. Super. 249, 269 (App. Div. 2014) (quoting State v. Walden, 370 N.J. Super. 549, 558 (App. Div. 2004)). "Prosecutors are afforded considerable leeway in [opening statements and] closing arguments as long as their comments are reasonably related to the scope of the evidence presented." State v. Patterson, 435 N.J. Super. 498, 508 (App. Div. 2014) (quoting State v. R.B., 183 N.J. 308, 332 (2005)).

The prosecutor's remarks "will not be deemed prejudicial" if no objections were made by defendant. State v. Frost, 158 N.J. 76, 83 (1999). In doing so, we consider that the overall tenor of the trial was emotional, as it involved the ongoing sexual abuse of a child under the age of thirteen. The prosecutor's remarks were vigorous, forceful, and were not "'so egregious' that [they] deprived defendant of the 'right to have a jury fairly evaluate the merits of his defense.'" State v. Williams, 244 N.J. 592, 607 (2021); State v. Pressley, 232 N.J. 587, 593-94 (2018) (quoting State v. Wakefield, 190 N.J. 397, 437-38 (2007)). Given the context of the challenged remarks, we find no merit to defendant's arguments.

Furthermore, the trial judge instructed the jury that counsels' summations were not evidence. We presume the jury followed those instructions. State v. Burns, 192 N.J. 312 (2007).

E.  Cumulative errors.

Defendant argues the cumulative effect of the previously discussed misconduct and trial errors deprived him of due process and a fair trial. Based on the record, there is no error, individually or cumulatively, in any of defendant's arguments that warrant a reversal of his convictions. State v. T.J.M., 220 N.J. 220, 238 (2015); see State v. Weaver, 219 N.J. 131, 155 (2014).

F.  Sentencing.

Finally, we address defendant's consecutive sentences of sixty-three years. Defendant argues the trial judge (1) erred in finding and weighing each mitigating and aggravating factor, (2) failed to merge count one with count three and count two with count four, and (3) failed to conduct the required analysis under Yarbough and Torres.

Our "review of a sentencing [judge]'s imposition of sentence is guided by an abuse of discretion standard." State v. Jones, 232 N.J. 308, 318 (2018) (citing State v. Robinson, 217 N.J. 594, 603 (2014)). Trial judges have the discretion to determine if a sentence should be concurrent or consecutive. State v. Cuff, 239 N.J. 321, 350 (2019). However, when a trial judge decides to impose a consecutive sentence, the judge must "place on the record its statement of reasons for the decision to impose consecutive sentences, which . . . should focus

20

'on the fairness of the overall sentence, and the sentencing judge should set forth in detail its reasons for concluding that a particular sentence is warranted.'" Torres, 246 N.J. at 267-68 (quoting State v. Miller, 108 N.J. 112, 122 (1987)).

When imposing a consecutive sentence, the Yarbough factors the judge must consider are: (1) whether the crimes and defendant's objectives were independent of one another; (2) whether the crimes involved separate acts or threats of violence; (3) whether the crimes were committed at different times or places; (4) whether the crimes involved multiple victims; and (5) whether the convictions are numerous. Yarbough, 100 N.J. at 643-44. These Yarbough factors are to be applied qualitatively, and not quantitatively. Cuff, 239 N.J. at 348.

If a judge fails to properly evaluate the Yarbough factors on the record and explain why consecutive sentences are warranted, "a remand is ordinarily needed for the judge to place reasons on the record." State v. Miller, 205 N.J. 109, 129 (2011). Here, the judge did not sufficiently address the Yarbough factors. The judge found defendant's conduct "clearly [was] repetitive due to the multiple acts that were testified to by [Georgina]," a finding that addressed only the third Yarbough factor, specifically subparts (b) (separate acts), (c) (committed at different times), and (e) (numerosity).

21

At the sentencing hearing, the judge determined aggravating factors two, three, four, and nine, N.J.S.A. 2C:44-1(a)(2) (gravity and seriousness of harm inflicted on the victim), (3) (risk of re-offense), (4) (defendant took advantage of a position of trust or confidence), and (9) (the need for deterrence), applied. However, the judge did not specify which aggravating factors were applied to each conviction, leaving us unable to discern how those factors were considered as to each conviction.

The judge rejected the State's argument that mitigating factor seven, N.J.S.A. 2C:44-1(b)(7) (absence of juvenile or criminal history), did not apply, finding defendant had no history of prior delinquency or criminal activity given his age and had lived a substantial part of his life without committing an offense. The judge noted that once these offenses began, they were "egregious" and "heinous." Nevertheless, the findings on the aggravating and the mitigating factors were not sufficiently detailed "to ensure fairness and facilitate review." State v. Comer, 249 N.J. 359, 404 (2022).

We are also not persuaded the judge satisfied the requirements set forth in Torres when addressing the overall fairness of imposing consecutive sentences. When imposing a consecutive sentence, a sentencing judge is required to provide "[a]n explicit statement, explaining the overall fairness of a sentence

22

imposed on a defendant for multiple offenses . . . ." Torres, 246 N.J. at 268 (citing Miller, 108 N.J. at 122). A remand may be required when the trial judge omits this analysis, unless the reviewing court "can readily deduce" inclusion or omission of any factors. State v. Bieniek, 200 N.J. 601, 609 (2010).

At sentencing, the judge stated that it was "within the interest of justice" to sentence defendant to consecutive sentences "because of the length of the abuse and the different time periods of the abuse and the distinction between them." Torres provides the appropriate standard for consideration, rather than the interest of justice standard. Accordingly, we remand the matter to address the overall fairness of the sentence imposed on defendant.

Defendant next argues that the trial judge erred by failing to merge second-degree sexual assault with first-degree aggravated sexual assault, and third-degree aggravated sexual contact with first-degree aggravated sexual assault. We leave that issue to be addressed by the trial court at the resentencing.

In sum, we affirm defendant's convictions. However, we vacate defendant's sentences and remand for resentencing. We leave to the judge's sound discretion whether to permit further briefing and argument. The "[judge] should view defendant as he stands before the [judge]" at the time of the

resentencing.  State v. Randolph, 210 N.J. 330, 354 (2012).  We express no opinion as to an appropriate sentence.

Affirmed in part, vacated and remanded in part.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division